STATE OF FLORIDA *ex rel.* J. C. LUNIG, STATE TREAS-
URER OF THE STATE OF FLORIDA, AND ED SCOTT, F.
O. MILLER, W. J. HILLMAN, J. D. SMITH AND M.
M! SMITH, MEMBERS OF THE STATE ROAD DEPART-
MENT OF THE STATE OF FLORIDA, *Relators,* v. R. G.
JOHNSON, L. S. CRUMP, WILLIAM ROBERTS, J. C.
MOORE AND W. E. GRAY, CONSTITUTING AND COM-
POSING THE BOARD OF COUNTY COMMISSIONERS OF
LEON COUNTY, FLORIDA, AND W. A: DeMILLY, TAX
COLLECTOR OF LEON COUNTY, FLORIDA, *Respond-
ents.*

Opinion filed March 28, 1916,

LAWS IN PARI MATERIA SHOULD BE CONSTRUED TOGETHER—WHERE
THE SAME LEGISLATURE ENACTS TWO SEPARATE STATUTES IN
PARI MATERIA SOME PARTS SEEMINGLY IN CONFLICT, THE
COURTS WILL LOOK TO THE INTENTION OF THE LAW-MAKERS
RATHER THAN TO THE LETTER OF THE CONFLICTING PROVI-
SIONS, AND WILL TREAT THE ONE CONFLICTING PROVISION AS
AN EXCEPTION TO OR LIMITATION OF THE OTHER WHEN BY
SO DOING THE INTENTION OF THE LEGISLATURE CAN BE CAR-
RIED OUT. CONTROL OF PUBLIC HIGHWAYS NOT VESTED IN
BOARDS OF COUNTY COMMISSIONERS BY ANY PROVISION OF THE
CONSTITUTION.

1. The provisions of Section. 10 of Chapter .6883 approved June
2nd, 1915, requiring fifteen per cent of the amount of all
county licenses collected upon automobiles and other motor-
driven vehicles to be paid to the State Treasurer as a special
fund for the maintenance of the State Road Department, is
a valid provision of law, and was not repealed by any pro-
vision of Chapter,6881 laws approved June 4th,1915, but should
be construed and held to operate as an exception to and
qualification of the provision of Section 2 of said Chapter
6881 requiring that all monies derived from the payment of
such license tax shall be paid into the general road and
bridge funds of the several counties.

2.  The intention of the legislators in enacting a law is the law
    itself and must be enforced when ascertained, although it
    may not be consistent with the strict letter of the statute.
    The court will not follow the letter of the statute when it
    leads away from the true intent and purpose of the ligisla-
    ture and to conclusions inconsistent with the general purpose
    of the act.  The general rule of statutory construction is that
    the intent of the lawmakers is to be found in the language
    that has been used, and the courts have no function of legis-
    lation, but simply seek to ascertain the will of the legislature.
    If, however, from a view of the whole law, or from other
    laws *in pari materia*, the evident intention is different from
    the literal import of the terms employed to express it in
    a particular part of the law, that intention should prevail,
    for that, in fact, is the will of the legislature.

3.  The presumption is that different acts on the same subject
    passed at the same session of the legislature are imbued
    with the same spirit and actuated by the same policy, and
    they should be construed each in the light of the other.
    The legal presumption is that the legislature did not intend
    to keep really contradictory enactments in the statute book,
    or to effect so important a measure as the repeal of a law
    without expressing an intent to do so.  An interpretation
    leading to such a result should not be adopted unless it is
    inevitable.    The rule of construction in such cases is that
    if the courts can by any fair, strict or liberal construction
    find for the two provisons a reasonable field of operation,
    without destroying their evident intent and meaning, pre-
    serving the force of both, and construing them together in
    harmony with the whole course of legislation, it is their duty
    to do so.

4.  Laws should be construed with reference to the constitution
    and the purpose designed to be accomplished, and in con-
    nection with other laws *in pari materia*, though they con-
    tain no reference to each other.

5.  Where one statute in comprehensive terms covers a subject
    and another later statute embraces only a particular part of
    the same subject the two should be construed together un-

less a different legislative intent appears; and the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general tercs of the more comprehensive statute to the extent only of the repugnancy, if any. This last stated rule applies with especial force to apparently repugnant provisions in different enactments passed by the same legislature.

6. Where the legislature enacts one statute making general and comprehensive provision for the creation of a State Road Department and defining its powers and duties, and in one section devotes a certain percentage of all monies collected from license taxes imposed on automobiles and other motor-driven vehicles to a special fund for the maintenance of such road department, and then the same legislature enacts another statute a few days later that in comprehensive terms provides for the imposition of fixed license taxes on automobiles and other motor-driven vehicles, which latter act contains a section devoting all of said license taxes to the general road and bridge funds of the several counties in which they are collected, *Held*: That these two acts must be construed together as being *in pari materia* in so far as they both make provision for the disposal of the license taxes derived from automobiles and other motor-driven vehicles, and to make them both operative and effective, as it was the evident intent and purpose of the legislature that they should be, the provision of the first act devoting a fixed percentage of such license taxes to a special fund in the State Treasurer's hands for the maintenance of such State Road Department, must be held to be an exception to and qualification of the provision of the later act devoting the whole of such license taxes to the general road and bridge funds of the several counties where collected.

7. There is nothing in our constitution that prohibits the legislature from enacting a statute taking away from the Boards of County Commissioners, not only a part, but the whole of their powers of supervision and control of public roads and bridges, and lodging such powers elsewhere; since the con-

trol of all general public highways is vested in the State absolutely without any constitutional limitations or restrictions.

Case of original jurisdiction in Supreme Court.

Demurrer to Alternative Writ of Mandamus overruled.

### Statement.

An alternative writ of mandamus was on the relation of the relators granted by this court to the respondents, in which it is alleged among other things as follows:

"That it is provided in Section 1 of Chapter 6881, Acts of 1915, Laws of Florida, that the owner or operator of every automobile or other motor driven vehicle operated in this State more than fifteen days, when used for hire or charter, or when charge is made for use thereof, in any manner of form whatever, shall pay annually to the Tax Collector of the county in which such vehicle is used a license tax of the amount therein prescribed, the amount of such tax depending upon the seating capacity or carrying capacity of such vehicle. And there is also imposed by said Statute upon all automobiles and other motor driven vehicles used by the owner thereof for his own use a license tax of the amount stated in said Statute, the basis therefor being the seating capacity or carrying capacity of such vehicle. That such license tax in each instance is payable annually or semi-annually in advance, the license year commencing on the first day of October of each year and ending on the last day of September of the succeeding year.

## IV.

"That by Chapter 6883, Acts of 1915, Laws of Florida, the State Road Department of the State of Florida was created, the selection and appointment of the members of said Department were provided for, and the duties and powers of said Department were prescribed.

"By such Statute it is made the duty of the State Road Department to locate and establish the headquarters and office of the said Department at the State Capitol; to select annually a chairman and secretary of said Department; to adopt and use a common seal, and keep full and correct minutes of the meetings of said Department, which are to be open to the public; to adopt and enforce regulations for the government of the business of the Department; to hold meetings at the office of the said Department at regular intervals, not less than semi-annually, and to hold special meetings at any time and place on not less than one week's notice by at least three members given to the other members of said Department.

"And said Department was by said Statute given the power and authority to employ a competent person, to be known as the State Road Commissioner, who shall be a competent and efficient road builder and well versed in the building of good roads; to employ one or more assistants to the State Road Commissioner; to purchase such instruments, supplies and materials, and employ such clerical help and assistance, as may be necessary in carrying out the provisions of said statute, the compensation of all such employees to be fixed by the said Department; to collect data and information as to all roads in the State, and to have maps and plats made thereof, where practicable; to investigate and collect data and in-

formation as to the best methods and materials for road building and repairs; to investigate and gather information as to suitable material for road building and repair in the different localities of the State; to compile the data, and information so secured, and to furnish the same, free, to the County Commissioners of the several counties and to the public; to have the said State Road Commissioner, or assistant of said State Road Commissioner, to visit the several counties and inspect the roads therein and the method of road construction and repair and the materials used in building and repairing roads by the County Commissioners of the various counties, and make report thereof to the Department.

"It is further provided by said statute that the records, books, contracts, machinery, implements, property and premises under the control or jurisdiction of the various Boards of County Commissioners of the several counties shall at all times be open to and accessible for the inspection of the said State Road Commissioner, or his assistants, and the County Commissioners of the various counties are required to make and file with the said State Road Department quarterly reports and detailed statements of all moneys expended by them in the construction and maintenance of roads in their respective counties, such reports to be made in such form as the Department may prescribe and to be filed with the Department not later than ten days after the last day of each quarter; and it is provided that if the State Road Department shall learn that road repair or construction work is being improperly or extravagantly done, or that improper or inferior materials are being used for such work in any county in such way as to cause a loss or waste of public funds, it shall be the duty of the Department to notify the County Commissioners of the County

in which such improper work is being done or such improper material is being used, and to point out to them the defect in such work or material; and it is made the duty of said Department, upon the request of the County Commissioners of any of the counties in this State, to advise and assist them in the construction or repair of roads and to send, whenever practicable, the State Road Commissioner, or his assistant, into such county and render all assistance practicable without expense to the county, except that the actual travelling expenses of such Commissioner, or his assistant, shall be paid by the county requesting such services.

## V.

"That for the purpose of meeting the necessary expenses of the said State Road Department, to be incurred in the payment of salaries of the State Road Commissioner and his assistants, the purchase of instruments, supplies and materials, the payment of the salaries of the necessary clerical help, and other expenses necessary and proper to be incurred in carrying out and performing the duties imposed upon said Department in accomplishing the great public service designed and intended to be accomplished by said legislation, it was provided by Section 10 of said statute that fifteen (15) per cent of the amount of all county licenses collected upon automobiles, automobile trucks and other motor driven vehicles should be paid over to the State Treasurer of the State of Florida, to be kept in a special fund for the maintenance of the State Road Department, and that the amount so set apart and appropriated should be remitted to the State Treasurer as other tax moneys are remitted.

## VI.

"That although the respondent, W. A. DeMilly, as Tax Collector of Leon County, Florida, did collect the license tax imposed by Chapter 6881, Acts of 1915, Laws of Florida, on those persons owning and operating automobiles and other motor driven vehicles in Leon County, Florida, for the months of October, November and December in the year 1915, and for the months of January and February in the year 1916, in the sums of $914.50, $190.50, $100.00, $173.00 and $82.00, respectively, and although it was and is his duty under said Statute to remit monthly, as required by Section 10 of Chapter 6883, Laws of Florida, fifteen (15) per cent of the amount collected on said account for the preceding month as other tax moneys are remitted, he has failed and refused, and still refuses, to make such remittance, but, on the contrary, has paid over into the County treasury of said County to the credit of the County Road and Bridge Fund the entire amount so collected by him for the months of October, November and December in the year 1915, and for the month of January in the year 1916, aggregating $1,378.00, but now has in his custody and possession the amount collected by him on said account for the month of February, 1916, amounting to $82.00.

"That although said several amounts have been paid by said respondent, W. A. DeMilly, into the County treasury of said County of Leon and is now held by the County Treasurer of said County in the Road and Bridge Fund of said County, and although said several amounts cannot be withdrawn from said County treasury of said County and remitted to said State Treasurer as provided by law, in order that it may be available for

the use of said State Road Department, as appropriated
by said Statute, except upon an order drawn by the
Board of County Commissioners of said County, all of
which is well known to said respondents, the said re-
spondents, R. G. Johnson, L. S. Crump, William Rob-
erts, J. C. Moore and W. E. Gray, as the Board of Coun-
ty Commissioners of said County of Leon, have failed
and refused, and still refuse, to make such order or or-
ders and draw such warrant or warrants as are neces-
sary and proper to authorize and permit the said several
sums now illegally held in the treasury of said County to
be withdrawn therefrom and transferred and remitted to
the State Treasurer, J. C. Luning, the relator herein, as
required by law.

## VII.

"Your relators further show that the said State Road
Department has been duly organized and is now engaged
in the work for which it was created; that a number of
the counties in the State of Florida are complying with
the provisions of the Statute appropriating fifteen (15)
per cent of the amount of all county license taxes collect-
ed upon automobiles, automobile trucks and other motor
driven vehicles, for the maintenance of the State Road
Department, and are regularly making monthly remit-
tances of such amounts to the State Treasurer of the
State of Florida, and the amounts so remitted are re-
ceived and kept by the State Treasurer in a special fund
for the maintenance of the said State Road Department;
that the said Department is in urgent need of said mon-
eys, and the work of said Department is being hampered
and delayed because of the withholding of said funds
by said County of Leon and refusal to remit same to the

State Treasurer of said State so that it may be available for use by said State Road Department in carrying out the purpose and intent of the law creating said Department and prescribing and defining its duties and powers.

## VIII.

"Your relators further aver and show that the law affords to them no adequate or specific remedy save and except by a proceeding of this character.

"*And Whereas* it is prayed by said petition that a writ of mandamus be issued as set forth in said petition,

"*Now, Therefore,* we, being willing that full and speedy justice should be done in the premises, do command you, R. G. Johnson, L. S. Crump, William Roberts, J. C. Moore, and W. E. Gray, as members of the Board of County Commissioners for the County of Leon, State of Florida, that you do forthwith assemble and order and draw the warrant of your said Board upon the County Treasurer of Leon County, payable to the State Treasurer of this State, for an amount equal to 15 per cent of the amount paid into the County Treasury by the respondent, W. A. DeMilly, as Tax Collector of said County, on account of the license tax imposed by Chapter 6881, Acts of 1915, Laws of Florida, on all those persons owning and operating automobiles and other motor driven vehicles in Leon County, Florida, and collected by said Tax Collector and paid into the County Treasury of said County for the months of October, November and December in the year 1915, and for the month of January in the year 1916, namely 15 per cent of $1,378.00, the same being $206.70; and that you, W. A. DeMilly as Tax Collector of said County, do remit 15 per cent of the amount now in your hands col-

lected by you on said account for the month of February in the year 1916, together with 15 per cent of all additional amounts hereafter collected by you as Tax Collector for said month, and for each succeeding month hereafter, to the relator, J. C. Luning, as State Treasurer of the State of Florida, in the same manner and at the same periods and times as other tax moneys are remitted to the said State Treasurer.

Or that you and each of you show cause why you have not done so before our Supreme Court at the Capital, Tallahassee, Florida, at ten o'clock A. M. on the 18th day of February, A. D. 1916, and have you then and there this writ."

To this alternative writ the respondents have interposed a demurrer on the following grounds:

"1.   Section 10 of Chapter 6883 of the Laws of Florida approved June 2nd, 1915, was repealed by Section 2 of Chapter 6881 of the Laws of Florida approved June 4th, 1915.

2.   If Section 10 of Chapter 6883 of the Laws of Florida was not repealed by Section 2 of Chapter 6881 of the Laws of Florida, it is ineffective, because in violation of the provisions of Section 5 of Article VIII and Section 5 Article IX of the constitution of the State."

*T. F. West,* Attorney General, for Relators;

*Fred T. Myers,* for Respondents.

TAYLOR, C. J. (*after stating the facts*)—The Legislature at its session in the year 1915 enacted the following as Section Ten (10) of Chapter 6883 that was approved by the Governor on June 2nd, 1915:

"Sec. 10.   Fifteen per cent of the amount of all

county licenses collected upon automobiles, automobile trucks and other motor driven vehicles shall hereafter be paid over to the State Treasurer to be kept in a special fund for the maintenance of the State Road Department, and the same shall be remitted to the State Treasurer as other tax monies are remitted."

The other sections of this Chapter made provision for the creation of a State Road Department to consist of five members and prescribing its duties and powers, such members to be appointed by the Governor and confirmed by the Senate and to hold their offices for four years.

The same legislature of the year 1915 also enacted the following as Section Two (2) of Chapter 6881 that was approved by the Governor on June 4th, 1915: "All monies derived from the payment of such license tax shall be paid into the road and bridge funds of the several counties." This Chapter 6881 is entitled: "An Act to Amend Chapter 6212 of the Acts of the Legislature of 1911, Same being Entitled 'An Act to license Automobiles and Other Motor Driven Vehicles Using the Public Roads or Highways in the State of Florida, Either for Hire or Otherwise.'" It amends only the first section of Chapter 6212 laws of the year 1911, by increasing the license taxes originally imposed by that section, and re-enacts as Section 2, of the amendatory act *ipsissimis verbis* section 2 of the amended act Chapter 6212. It is contended in support of the demurrer that the above quoted Section 2 of Chapter 6881 being the last law passed on the subject, and being in irreconcilable conflict with the provisions of Section 10 of Chapter 6883, that the latter section 10 was repealed thereby by implication and is wholly inoperative, and no longer enforcible law. We cannot sustain this contention. Both of

these acts were passed by the same legislature, Chapter 6881 being approved by the Governor only two days later than his approval of Chapter 6883. Chapter 6881 has no repealing clause, and both acts expressly provide that each of them shall take effect as laws on the same day, *viz,* October 1st, 1915.

Chapter 6883 provides a State Road Department composed of five State officers with important public functions and duties State wide in character affecting all the public highways throughout the State, and provides that fifteen per cent of the amount of all county licenses collected upon automobiles, etc., shall be paid to the State Treasurer for the maintenance of said State Road Department, and this from every county in the State; while Chapter 6881 prescribes a license tax to be paid annually on all automobiles to the Tax Collector of the several counties in the State, but providing that the payment of the license tax in any one county should exempt the owner or operator from the payment of any other such county or State license tax during the license year. And it prescribes a higher license tax than had theretofore been assessed by law. Can it fairly be conceived that it was the intention of the legislature to make elaborate provision in one act for a State Road Department and in such act provide for its maintenance by a small percentage of the moneys collected throughout the State from automobile licenses, and then within two days time enact another law providing for the collection of such automobile licenses, and therein intentionally strike down such State Road Department law by a clause in the second enactment depriving it of the only provision made for its maintenance by simply devoting the whole of such license taxes to other uses and purposes? We do not think this was the deliberate intention of the legislature. The two acts were passed within two days of each other

through both houses of the legislature during the hurry of the closing days of the session. Chapter 6883 creating the State Road Department was originated in and passed by the Senate, was amended in the House in several important particulars, and upon being reported back to the Senate with these House amendments they were formally concurred in by the Senate. So that it is apparent that it was the intention of the legislature that this Chapter 6883 should go into our statute books as a law. The presumption should never be indulged that the same legislature intentionally enacts two different acts into law that are so incongruous, so inconsistent, and so conflicting the one with the provisions of the other that both acts cannot stand as valid law together. And why? Because the same legislature is never presumed to go through the solemn formula of enacting something into law that they know is being rendered nugatory and of no effect by their subsequent enactment of another law, but will simply refrain from enacting the one or the other of said two conflicting enactments, or, if they find that they have made a mistake in the enactment of the one or the other of said two statutes, that they will in plain, solemn and dignified form repeal the statute concluded by them to be objectionable and a mistake. And this gives rise to the following rules of construction as laid down in the case of Curry v. Lehman, 55 Fla. 847, 47 South. Rep. 18. "The intention of the legislature in enacting a law is the law itself and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. The court will not follow the letter of the statute when it leads away from the true intent and purpose of the legislature and to conclusions inconsistent with the general purpose of the act.

"Undoubtedly the general rule of statutory construction is that the intent of the lawmakers is to be found in the language that has been used, and the courts have no function of legislation, but simply seek to ascertain the will of the legislature. If, however, from a view of the whole law, or from other laws *in pari materia,* the evident intention is different from the literal import of the terms employed to express it in a particular part of the law, that intention should prevail, for that, in fact, is the will of the legislature.

"It is to be presumed that different acts on the same subject passed at the same session of the legislature are imbued with the same spirit and actuated by the same policy, and they should be construed each in the light of the other. The legal presumption is that the legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intent to do so. An interpretation leading to such a result should not be adopted unless it be inevitable. The rule of construction in such cases is that if the courts can by any fair, strict or liberal construction find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and construing them together in harmony with the whole course of legislation, it is their duty to do so."

"Laws should be construed with reference to the constitution and the purpose designed to be accomplished, and in connection with other laws *in pari materia,* though they contain no reference to each other."

"Where one statute in comprehensive terms covers a subject and another later statute embraces only a particular part of the same subject, the two should be construed together unless a different legislative intent ap-

pears; and the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any." State *ex rel*. Loftin v. McMillan, 55 Fla. 254, 45 South. Rep. 882. This last stated rule applies with especial force to apparently repugnant provisions in different enactments passed by the same legislature. Thus, as in the case under consideration, if the same legislature enacts one statute making general and comprehensive provision for the creation of a State Road Department, defining its powers and duties, and in one section devotes a certain percentage of all moneys collected from the license taxes imposed on automobiles and other motor vehicles, to a special fund for the maintenance of such Road Department, and then enacts another statute a few days later that in comprehensive terms provides for the imposition of fixed license taxes on automobiles and other motor driven vehicles, which latter act contains a section devoting all of said license taxes to the general road and bridge funds of the several counties in which they are collected. These two acts must be construed together as being *in pari materia* in so far as they both make provision for the disposition of the license taxes derived from automobiles, and to make them both operative and effective as it was the evident intent and purpose of the legislature that they should be, the provision of the first act devoting a fixed percentage of such license taxes to a special fund in the State Treasurer's hands for the maintenance of such State Road Department, must be held to be an exception to and qualification of the provision of the later act devoting the whole of such license taxes to the general road and bridge funds of the several counties where collected.

It is next contended that Section 10 of Chapter 6883. conflicts with the following Section 5 of Art. VIII of our constitution: "Immediately upon the ratification of this amendment the County Commissioners of the several counties of this State shall divide their respective counties into five commissioners districts, to be numbered respectively from one to five inclusive, and each district shall be as nearly as possible equal in proportion to population, and thereafter there shall be in each of such districts a county commissioner, who shall be elected by the qualified electors of said county, at the time and place of voting for other county officers, and shall hold his office for two years. The powers, duties and compensation of such county commissioners shall be prescribed by law." And it is further contended that said section conflicts with the following Section 5 of Art. IX of our constitution: "The legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation. But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits. The legislature may also provide for levying a special capitation tax, and a tax on licenses. But the capitation tax shall not exceed one dollar a year and shall be applied exclusively to common school purposes." How or why Section 10 of Chapter 6883 conflicts with the above quoted Section 5 of Art. VIII of our constitution is not very clearly defined in the briefs for the respondents, unless it be, as is somewhat vaguely intimated in said briefs, that the whole of said Chapter 6883 conflicts with said Section 5 of Art. VIII in that it creates a State Road Department

to have limited supervision over the public highways in the State when the exclusive supervision and control of all public roads and bridges has been vested in the various boards of county commissioners for the several counties in the State. We can not see how this conflicts with said section of our organic law. Nowhere does our constitution place the supervision and control of public roads and bridges in the county commissioners, but our legislature has by law given them such supervision and control, as the legislature was by this section of the organic law empowered to do in prescribing their powers and duties. We find nothing in our organic law that would prohibit the legislature from enacting a statute taking away from said County Boards not only a part, but the whole of their powers of supervision and control of public roads and bridges, and lodging such powers elsewhere; since the control of all public highways is vested in the State absolutely without any constitutional limitations or restrictions.

The contention for the respondents that Section 10 of said Chapter 6883 conflicts with Section 5 of Art. IX of our constitution is in effect that it is an unconstitutional diversion to State purposes of part of the taxes that were assessed and levied by the various counties exclusively for county purposes. A complete answer to this contention is that these license taxes on automobiles are not assessed and levied by the various counties for county purposes, but have been fixed and imposed directly by the lawmaking power by its enactment of said Chapter 6881, Laws of 1915.

It follows from what has been said that the demurrer

of the respondents to the alternative writ must be and is hereby overruled.

SHACKLEFORD, COCKRELL, WHITFIELD and ELLIS, JJ., concur.