317 So.2d 68 (1975)
The STATE of Florida, in the Relation of the SCHOOL BOARD OF MARTIN COUNTY, Florida, Relator,
v.
The DEPARTMENT OF EDUCATION, State of Florida, a State Agency, and Gerald Lewis, Comptroller, State of Florida, Respondents.
No. 47475.
Supreme Court of Florida.
July 16, 1975.
Rehearing Denied September 10, 1975.
*69 James Elliott Messer and Robert M. Rhodes, Thompson, Wadsworth & Messer, Tallahassee, for relator.
Robert L. Shevin, Atty. Gen., and Larry Levy, Asst. Atty. Gen., for Dept. of Ed., and Howard Horowitz, Gen. Counsel, Miami, and William B. Corbett, Jr., Asst. Gen. Counsel, Tallahassee, for Gerald A. Lewis, respondents.
SUNDBERG, Justice.
The jurisdiction of this Court was properly invoked under Art. V, § 3(b)(5), Florida Constitution, and Rule 4.5, subd. b.(1), Florida Appellate Rules, for issuance of an alternative writ of mandamus directed to the respondents. Although several constitutional attacks have been made upon the position of the relator by the respondents, we deem the question raised in these proceedings, simply stated, to be: Has the Department of Education misconstrued the provisions of § 236.081, Florida Statutes, as amended by Ch. 74-227, Laws of Florida, so that the Department of Education has, in fact, failed properly to perform a ministerial duty incumbent upon it, thereby depriving relator of a clear legal right?
The factual background out of which the dispute arises is as follows: The Legislature on May 31, 1974, enacted Ch. 74-227, Laws of Florida, amending, inter alia, § 236.081, Florida Statutes, dealing with apportioning or allocating state school funds to the credit of the county district school boards in administering the Florida Education Finance Program (FEFP). By Ch. 74-227, § 236.25, Florida Statutes, also was amended to place an 8 mill limitation on millage by school districts in order for a district to participate in the FEFP. Ch. 74-227, Laws of Florida, became effective July 1, 1974.
On May 31, 1974, the Legislature also enacted Ch. 74-535, Laws of Florida, Special Acts of 1974, whereby, subject to public referendum, a millage roll back was directed for taxing entities in Martin County, Florida. This act became effective after approval at a public referendum held in Martin County on November 6, 1974.
The budget for relator for the school year 1974-1975 was submitted to the Department of Education on August 15, 1974, and approved by the department on December 3, 1974.
Although pursuant to Chapters 193 and 194, Florida Statutes, the tax assessor in each county is required to complete his assessment of the value of all property no later than July 1 of each year and the assessment roll is required to be submitted to the executive director of the Department of Revenue for review on or before the first Monday in July in each year, due to a comprehensive reappraisal of the real property in Martin County, the tax assessor, instead of submitting the tax roll to Martin County in July did not submit it until December 5, 1974, and it was approved on January 8, 1975. The Department of Revenue was authorized to extend the assessment date for good cause shown. Relator thereafter established its millage on February 12, 1975, at 6.3373 mills, the "required local effort" as previously established by the Department of Education *70 pursuant to § 236.081(5), Florida Statutes, as amended by Ch. 74-227, Laws of Florida. The tax collector of Martin County prepared and transmitted tax bills to the public on March 10, 1975.
The general counsel for the Department of Education advised the Commissioner of Education by letter dated January 16, 1975, that the Martin County school district's entitlement to state funds should be computed on the basis of the millage allowed in the local act (Ch. 74-535, Laws of Florida, Special Acts of 1974) which, in the opinion of the general counsel for the Department of Education, established a "maximum allowable nonvoted millage" of 6.794 mills, said amount being 15% greater than the 5.908 millage figure ultimately certified by the county tax assessor on December 5, 1974, pursuant to the "roll back" mandate.
On March 10, 1975, the Secretary of the Department of Administration challenged the general counsel's interpretation and requested the opinion of the Attorney General. At that time, the Department of Education was allocating and distributing to Martin County FEFP funds based upon a "maximum allowable nonvoted millage" of 6.794 mills, and the Department of Administration requested the Department of Education not to distribute additional funds to the School Board of Martin County based on that interpretation of the law.
By letter dated April 14, 1975, the Director of the Division of Public Schools of the Department of Education notified the Superintendent of Schools for Martin County that, because of the action of the Department of Administration, the Department of Education must consider the district's tax roll at 8 mills for purposes of FEFP "no-loss computation," resulting in an overpayment to the district; therefore, the director requested a refund to the department of $455,468.00.
On May 2, 1975, the Attorney General issued Opinion 075-125, opining that the distribution of FEFP funds should be based on the provisions of general law, § 236.081(7)(b), subd. 4, par. b., Florida Statutes, and not based upon a "maximum allowable nonvoted millage" of 6.4538 mills computed pursuant to Ch. 74-535, Laws of Florida, Special Acts of 1974. Thereafter, on June 3, 1975, the petition for mandamus herein ensued, praying, inter alia, that the Department of Education be compelled to disburse withheld FEFP funds to relator based upon an asserted maximum allowable nonvoted millage of 6.454 mills.[1] After oral argument on June 4, 1975, an alternative writ was issued. In response to the alternative writ the respondents filed their returns, which include a counterclaim for recoupment of the alleged overpayment to the Martin County school district.
When one pierces the multiple assertions and contentions of the parties set forth in their respective pleadings and briefs, this dispute devolves down to a question of statutory construction, more particularly a discernment of the intent of the Legislature as expressed in Ch. 74-227 and Ch. 74-535, Laws of Florida. The provisions of Ch. 74-227, Laws of Florida, at issue are set forth basically in § 236.081(7), Florida Statutes, 1974 Supplement, which recites the formula for allocation of FEFP funds to each district for current operation and establishes the "minimum level of funding" for each district for the 1974-1975 fiscal year. It should be noted at the outset that all school districts in the state participate in a single, finite appropriated fund so that the amount allocated to one district has an effect upon each of the other districts unless the amount appropriated *71 by the Legislature exceeds the cumulative requirements of all of the school districts in the state. This is made clear by the following language contained in subsection 236.081(7)(a):
"(a) ... If the funds appropriated for the purpose of implementing this subsection are not sufficient to pay the requirements in full, the Department of Education shall prorate the available funds on a percentage basis. If the funds appropriated for the purpose of implementing this subsection exceed the amount necessary to pay the requirements in full, the excess appropriation shall be transferred to, and become a part of, the appropriation for the comprehensive school construction and debt service program and shall be allocated by the department in the manner prescribed by s. 236.084... ."
After formularizing the net annual allocation of FEFP funds to each district in subsection 236.081(7)(a), the Legislature proceeded in subsection 236.081(7)(b) to establish the concept of "guaranteed minimum level of funding" and formularized it as follows:
"(b) The amount thus obtained shall represent the net annual state allocation to each district; however, notwithstanding any of the provisions herein, each district shall be guaranteed a minimum level of funding for the 1974-1975 fiscal year in the amount and manner prescribed below:

"1. The department shall determine the value per full-time equivalent student for the 1973-1974 fiscal year for each district as follows: Divide the total number of full-time equivalent students included in the 1973-1974 Education Finance Program into the sum of:
"a. The 1973-1974 state allocation for: Current operation, as provided in s. 236.081(6)(a) and (b); student transportation, as provided in s. 236.083(7); elementary school counselors, as provided in s. 236.086; occupational specialists, as provided in s. 236.085; and tax loss resulting from the additional homestead exemptions, as provided in s. 196.031(4); and
"b. The calculated yield of the actual nonvoted millage levied by the district during the 1973-1974 fiscal year on 95 percent of the 1973 calendar-year nonexempt assessed valuation of the district for school purposes, as determined pursuant to the provisions of * * * [subsection (5)].
"2. The value per full-time equivalent student determined in subparagraph 1. Shall be increased by 10 percent.
"3. The amount determined in subparagraph 2. shall be multiplied by the number of full-time equivalent students included in the final estimated computation of the 1974-1975 Education Finance Program.
"4. The amount determined in subparagraph 3. shall be the minimum level of funding for each district for the 1974-1975 fiscal year. Such amount shall include the following:
"a. The state allocation for current operation, as provided in paragraph (a), exclusive of all categorical programs, with the exception of student transportation, elementary school counselors, and occupational specialists and placement specialists; and
"b. The calculated yield of the allowable nonvoted millage during the 1974-1975 fiscal year on 95 percent of the 1974 calendar-year nonexempt assessed valuation of the district for school purposes as prescribed in s. 236.25.

"5. In any district in which the amount determined in subparagraph 3. does not equal or exceed the * * [sum of the] sources specified in subparagraph 4., the state share of this total shall be increased in an amount sufficient *72 to assure that each district receives the amount determined in subparagraph 3.

"6. If the millage levy proposed by the district school board in conjunction with state funding as provided in subparagraph 4.a. is calculated to produce an amount in excess of the amount determined in subparagraph 3., the district school board shall advertise such fact and the proposed millage levy in the manner prescribed in s. 200.065(3) and (4)." (Emphasis supplied.)
The Special Act, Ch. 74-535, provides in its pertinent parts:
"Section 1. Method of fixing millage.
"(1) After the tax assessment rolls have been prepared on the basis as required by law, the board of county commissioners, the school board, and all other governing boards or governing authorities of all other taxing districts in Martin County including municipalities, whose taxes are assessed on the tax roll prepared by the county assessor, shall reduce the millage to be levied by each such governing authority from what it was in the preceding year proportionate to the increase of the general level of assessed value over the preceding year, unless otherwise required by law to maintain a higher millage level in order to participate in state revenue sharing, or any other matching formula for funding of state or local governmental programs or projects... .
"(2) In the event any budget making authority determines that, due to impending emergencies, the authority will require funds in excess of those anticipated, and that unless additional funds are made available the operation of the authority in meeting its legal duties and obligations will be seriously impaired and provided that such budget making authority has requested and obtained a ten percent (10%) increase as set forth in subsection (1) herein, the budget making authority may apply for an additional increase not to exceed five percent (5%) of the millage as reduced by subsection (5), in the millage required to meet the budget for operating funds in the following manner:
* * * * * *
"Section 4. Local taxing authorities shall maintain a millage level necessary to participate in state revenue sharing, maintain the local required effort under the Florida education finance program or any other matching formula for funding of state or local governmental programs or projects."
Additionally necessary to our inquiry is subsection 236.25(1), Florida Statutes 1974 Supplement, which reads:
"* 236.25 District school tax. 
"(1) Each school board desiring to participate in the state allocation of funds for current operation as prescribed by s. 236.081(5) shall levy no more than 8 mills of tax on the nonexempt assessed valuation for school purposes of the district, exclusive of millage voted under the provisions of ss. 9(b) and 12 of Art. VII of the State Constitution."
It is our obligation, if possible, to harmonize Ch. 74-227 and Ch. 74-535, since it is obvious that both chapters relate to the subject matter of the FEFP. See Orlando Transit Co. v. Florida Railroad & Pub. Util. Comm'n, 160 Fla. 795, 37 So.2d 321 (1948); Ideal Farms Drainage Dist. v. Certain Lands, 154 Fla. 554, 19 So.2d 234 (1944); Arnold v. State ex rel. Mallison, 147 Fla. 324, 2 So.2d 874 (1941). To follow relator's argument to its logical conclusion, we would be obliged to ignore the last phrase of § 236.081(7)(b), subd. 4, par. b., Florida Statutes, as amended, reading: "... as prescribed in s. 236.25." This, in effect, would lead to the repeal of that phrase, by implication, insofar as the Martin County School Board is concerned. In our judgment such implied repeal is not *73 called for in that the statutes can be read together with effect being given to both. As was stated for this Court by Mr. Justice Parkhill in Curry v. Lehman, 55 Fla. 847, 47 So. 18, at p. 21 (1908):
"... It is to be presumed that different acts on the same subject passed at the same session of the Legislature are imbued by the same spirit and actuated by the same policy, and they should be construed each in the light of the other. The legal presumption is that the Legislature did not intend to keep really contradictory enactments in the statute books, or to effect so important a measure as the repeal of a law without expressing an intention to do so. An interpretation leading to such a result should not be adopted, unless it be inevitable. The rule of construction in such cases is that if courts can, by any fair, strict, or liberal construction, find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and construing them together in harmony with the whole course of legislation upon the subject, it is their duty to do so."
Accord, City of St. Petersburg v. Pinellas County Power Co., 87 Fla. 315, 100 So. 509 (1924); State ex rel. Luning v. Johnson, 71 Fla. 363, 72 So. 477 (1916). See also 82 C.J.S. Statutes § 292, p. 497.
A plain reading of subsection 236.081(7)(b), subd. 4, par. b., Florida Statutes, 1974 Supplement, makes it clear that an essential element of the formula for calculating the "hold harmless" contribution by the state is the "calculated yield of the allowable nonvoted millage during the 1974-1975 fiscal year... as prescribed in s. 236.25." (Emphasis supplied.) Section 236.25, as amended, clearly refers to 8 mills of tax on the nonexempt assessed valuation for school purposes of the district, exclusive of millage voted under the provisions of ss. 9(b) and 12 of Art. VII of the State Constitution. No other conclusion can be reached but that the "allowable nonvoted millage" referred to in subsection 236.081(7)(b), subd. 4, par. b., Florida Statutes, 1974 Supplement, is 8 mills. Relator contends that "allowable nonvoted millage" as applied to it is 6.454 mills due to the operation of Ch. 74-535. To concur in this assertion would be to impliedly repeal that portion of subsection 236.081(7)(b), subd. 4, par. b., which refers to section 236.25, Florida Statutes, 1974 Supplement. Such an interpretation, we believe, ignores the express exclusionary language of subsection (1) of § 1 of Ch. 74-535. Subsection (1) mandates a roll back in millage "... unless otherwise required by law to maintain a higher millage level in order to participate in state revenue sharing, or any other matching formula for funding of state or local governmental programs or projects." It is the position of relator that such exclusion is limited by § 4 of Ch. 74-535, which refers only to maintaining the "local required effort under the Florida education finance program." A more appropriate construction of the special act is that subsection (1) of section 1 creates an absolute exclusion within the area of its operation, leaving it to the local decision of relator in establishing millage to qualify for state aid, whereas section 4 is directive in requiring that relator "... [shall] maintain the local required effort under the Florida education finance program... ."
This analysis is borne out by reference to subsection 236.02(6), Florida Statutes, which sets forth the criteria for participation in the FEFP by adoption of the concept of "minimum required effort". In short, Ch. 74-535 mandates that relator shall meet the "minimum required effort" imposed by subsection 236.02(6), Florida Statutes, but by subsection (1) of § 1 leaves to local option in Martin County the decision of whether to levy the 8 mills necessary to meet the "allowable nonvoted millage" test of subsection 236.081(7)(b), subd. 4, par. b. Such an interpretation of Ch. 74-535 completely harmonizes it with Ch. 74-227. *74 To reach a contrary result would not only create an irreconcilable conflict between the two laws, but would distort what was surely intended by the Legislature to be a uniform scheme of support to all school districts in the state.
Relator asserts that under all circumstances it was guaranteed a 10% increase in the 1974-1975 fiscal year over the fiscal year 1973-1974 FTE allocation. With its proposition we disagree. Subsection 236.081(7)(b) did not guarantee absolutely a 10% increase, but rather guaranteed that the state would "plug the gap" between the 10% increase stated in subsection 236.081(7)(b), subd. 3., Florida Statutes, 1974 Supplement, and the sum of the sources set forth in subsection 236.081(7) (b), subd. 4., which are:
a. The state allocation set forth in subsection (a) of section 236.081(7), excluding the enumerated items; and
b. The "calculated yield of the allowable nonvoted millage ... as prescribed in s. 236.25." (Emphasis supplied.)
To conclude otherwise would be to give no effect whatsoever to the phrase "... as prescribed in s. 236.25."
We cannot attribute to the Legislature an intention to leave to the 67 school districts in the State of Florida the effective application of the complicated formula devised to allocate equitably among the school districts in Florida the state aid appropriated for that purpose. This conclusion is buttressed by that portion of § 236.081(7)(a), Florida Statutes, 1974 Supplement, which provides that if the funds appropriated are not sufficient to pay the requirements in full of the several districts, the Department of Education shall prorate the available funds on a percentage basis. Inherent in this provision is the concept of a tender balance being struck so that the FEFP can be fairly administered.
As a result of the foregoing conclusions reached in construing the interrelationship between Ch. 74-227 and Ch. 74-535, it is not necessary for us to pass upon the additional points raised by the parties.[2]
Relator's application for peremptory writ of mandamus is denied and the alternative writ heretofore issued is discharged.
ADKINS, C.J., and ROBERTS, BOYD, OVERTON and ENGLAND, JJ., concur.
NOTES
[1] There is an unexplained discrepancy among the opinion of the general counsel for the Department of Education (6.794 mills), the opinion of the Attorney General (6.4538 mills) and the statement of counsel for the relator in its petition (6.454 mills) with regard to the "maximum allowable nonvoted millage" calculated under Ch. 74-535, Laws of Florida, Special Acts of 1974, but resolution of such discrepancy is not essential to the result reached in this opinion.
[2] In their return, the respondents assert a counterclaim for funds allegedly distributed to relator by mistake and inadvertence. There being no provision in Rule 4.5, subd. b., Florida Appellate Rules, for such relief in a mandamus proceeding and it appearing obvious that factual issues necessarily would have to be framed to adjudicate such claim for relief, this Court will not entertain the asserted counterclaim; such ruling, however, is without prejudice to the right of any of the parties hereto to have such alleged claim adjudicated in a court of competent jurisdiction.