Dorothy W. Glisson Executive Secretary Department of Professional and Occupational Regulation Tallahassee
QUESTIONS:
1. Is the plan for staggered biennial issuance of licenses to be implemented by the Department of Professional and Occupational Regulation to be accomplished by adoption of a rule pursuant to Ch. 120, F. S.? If so, under what statutory authority would the Department of Professional and Occupational Regulation promulgate a rule?
2. Is the Department of Professional and Occupational Regulation legally authorized to adopt a rule for biennial renewal of licenses in derogation of specific statutory authority for Department of Professional and Occupational Regulation boards to renew licenses annually and specific entitlement of licensees to obtain renewal annually?
3. May the Department of Professional and Occupational Regulation, by rule or otherwise, establish fees for activation of licenses?
4. May the Department of Professional and Occupational Regulation establish fees for 2 years in lieu of the 1-year fees heretofore collected?
5. Does s. 455.09, F. S., empower or require the Department of Professional and Occupational Regulation to process `registrations' and `permits' biennially?
SUMMARY:
The Department of Professional and Occupational Regulation is authorized to implement a plan, with the concurrence of each board and commission within its jurisdiction, for staggered biennial renewal of licenses. This implementation is subject to the requirements of rulemaking set forth in the Administrative Procedure Act, Ch. 120, F. S. Those sections of the enabling statutes of the relevant boards and commissions which authorize annual renewal of licenses are repealed or modified by implication. The department is not authorized to establish fees for activation of licenses. The department is, however, authorized to establish renewal fees for 2 years in lieu of the 1-year fees heretofore collected. Due to the fact that `registrations' and `permits' have the same effect and are renewable under the same terms and conditions as licenses, the department is authorized to implement a plan for staggered biennial renewal of same and to process such registrations and permits.
AS TO QUESTION 1:
Section 455.09, F. S., as created by s. 1, Ch. 76-161, Laws of Florida, provides:
 The Department of Professional and Occupational Regulation shall implement a plan for staggered biennial renewal of licenses issued by the boards and commissions within the department.
The effective date of said act was July 1, 1977.
The legislative intent of said act is clear from the history of the legislation. Senate Bill 122, as introduced by Senator J. Thomas, read as follows:
 The Department of Professional and Occupational Regulation shall devise a plan for staggered biennial renewal of licenses issued by the boards and commissions within the department and shall submit the plan together with a proposal for legislative implementation to the Legislature no later than December 1, 1976. (Emphasis supplied.)
The effective date of said act would have been July 1, 1976.
It is apparent from a comparison of the original proposal and the final version as passed, as well as from the recorded tapes of Senate Committee on Governmental Operations meeting of April 13, 1976, the date the bill was reported to the Senate floor, that the amendments to the original bill were initiated and passed in order that implementation of staggered biennial renewal of licenses could become a reality without further legislative involvement. Rather than requiring the department to prepare a plan for future legislative implementation, the final version as passed allowed implementation by the department itself. The proposed effective date of the act was moved back one year to accomplish this feat.
The Senate Governmental Operations Committee, whose members had reworked the proposal, and the full Legislature itself, were well aware of the department's administrative role over the boards and commissions. The scope and effect of s. 20.30(5)(d), F. S. 1975, now s. 455.007(1)(d), F. S. 1977, were clear wherein the Bureau of Records Administration of the department is authorized to establish renewal and delinquency periods for licenses with theconcurrence of the board or commission affected. This is in line with the transfer authority set forth by the Legislature at s.20.06(2), F. S., wherein the department exercises administration functions of the examining and licensing boards assigned thereto. A proper reading of s. 455.09, F. S., and s. 455.007(1)(d), therefore, is that the department will implement a plan, with each board's or commission's concurrence, providing for staggered biennial renewal of licenses.
The question presented, however, concerns the method of accomplishment of the department's duty of implementation of such plan and whether such is governed by Ch. 120, F. S.
The Department of Professional and Occupational Regulation is an `agency' as defined by the Administrative Procedure Act, Ch. 120, F. S. See s. 120.52(1)(b), F. S.; cf. AGO's 075-6 and 076-50. Consequently, the provisions of the Administrative Procedure Act do apply to the department, and the rulemaking procedures established at s. 120.54, F. S., must be followed by the department in order to adopt valid administrative rules. See also
s. 20.04(7), F. S. Agencies have no inherent rulemaking authority, s. 120.54(13), and, to the extent an agency is authorized by law to adopt administrative rules, the substance and purpose of those administrative rules are limited by the legislative grant of rulemaking authority. St. Regis Paper Company v. State of Florida, Florida Air and Water Pollution Control Commission, 237 So.2d 797
(1 D.C.A. Fla., 1970); City of Cape Coral v. GAC Utilities, Inc.,281 So.2d 493 (Fla. 1973). And, it is a fundamental principle of administrative law that if there is a reasonable doubt as to the lawful exercise of a particular power which is being exercised, the further exercise of the power should be arrested. Edgerton v. International Co., 89 So.2d 488 (Fla. 1956); State v. Atlantic Coast Line Railroad Company, 47 So. 969 (Fla. 1908).
Except as otherwise provided in Ch. 20, F. S., (and see s.20.06(2), F. S.) the department is imbued with the authority to promulgate rules pursuant and limited to the powers, duties, and functions legislatively transferred to and created in Ch. 20. Section 20.05(5), F. S.
In this regard, it would appear that the plan which the department presents to each board or commission within its jurisdiction for its concurrence is a `rule.' A `rule,' as defined in s.120.52(14), F. S., means `each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency.' Expressly removed from the definition of `rule' are internal management memoranda which do not affect the private interests of any person or any paln or procedure important to the public. The plan implemented by the department, although necessarily requiring the concurrence of each board and commission affected, would appear to fall within the statutory definition of rule and thus require implementation subject to the rulemaking procedures of Ch. 120, F. S. Thus, to the extent the department is authorized to implement the plan for staggered biennial renewal of licenses, the department is subject to the rulemaking requirements of Ch. 120.
AS TO QUESTION 2:
The primary guide to statutory interpretation is to determine the purpose of the Legislature, to ascertain the legislative will, and to carry that intent into effect. Tyson v. Lanier, 156 So.2d 833
(Fla. 1963); State v. Atlantic Coast Line Railroad Co., supra. It is presumed that statutes are passed with knowledge of prior existing statutes and that the Legislature does not intend to keep contradictory enactments in effect. Where there is a material repugnance in statutory regulations or where there exists evidence of intent that a later act shall modify or supersede a prior act, such should be given effect. State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68 (Fla. 1975); Orange City Water Company v. Town of Orange City, 255 So.2d 257
(Fla. 1971); Berkley v. State Department of Environmental Regulation, 347 So.2d 467 (1 D.C.A. Fla., 1977); Miami Water Works Local No. 654 v. City of Miami, 26 So.2d 194 (Fla. 1946); AGO 074-59.
Section 455.09, F. S. (Ch. 76-161, Laws of Florida), contemplates implementation of staggered biennial renewals of all licenses issued by the boards and commissions within the department. Pursuant to s. 455.007(1)(d), F. S. 1977, the department will prepare the administrative plan, submitting same to the boards and commissions affected for their concurrence. As this plan is implemented, annual license renewal as contemplated by the following governing statutes of the relevant boards and commissions will be irreconcilable with the now effective legislative enactment: Chapters 458, 459, and 460, and ss. 461.07,462.08, 463.17, 464.151, 465.091, 466.17, 467.12, 470.10, 472.09, 473.111, 474.25, 476.13, 481.061, 484.08, 486.131, 489.06, 490.25, 491.11, 492.16, 475.13, and 310.21, F. S. Cf. AGO 074-59.
Insofar as the statutes of those boards and commissions assigned to the department authorized annual renewal of licenses, those statutes are in irreconcilable conflict with s. 455.09, F. S., when those individual boards or commissions concur with the department's plan for staggered biennial renewal of licenses. As such, those statutes are repealed or modified by implication. State v. Digman, 294 So.2d 325 (Fla. 1974); AGO 074-59. Your second question is answered in the affirmative.
AS TO QUESTION 3:
Question 3 is answered in the negative.
The department's powers in this regard are limited to those which are granted by s. 455.09, F. S., in conjunction with s. 455.007(1), F. S. 1977. Section 455.09 authorizes the department's implementation of a plan for staggered biennial license renewal. Section 455.007(1)(d) authorizes the department to perform theadministrative functions of the boards and commissions, among others, of issuance of licenses, collection of fees, and establishment of renewal periods. No responsibility is directly vested in the department to establish fees for activation or deactivation of licenses, as such has been previously spelled out by the Legislature in the various governing statutes for the individual boards and commissions; and see s. 20.06(2), F. S.
As there is no irreconcilable conflict between the department's authority pursuant to s. 455.09, F. S., and other legislative commands through the individual boards' and commissions' enabling statutes and Ch. 20 F. S., there is no necessity of implying repeal or modification of previous statutes concerning activation of licenses.
AS TO QUESTION 4:
Question 4 is answered in the affirmative.
It is readily apparent that the legislative intent of s. 455.09, F. S., was to unburden the various boards and commissions within the department from annual renewal of licenses and to ease the administrative burdens and expense associated therewith. See tapes of Senate Committee on Governmental Operations, April 13, 1976. It was not an attempt by the Legislature to ease the financial burden on the licensed professionals whose fees finance and support their respective regulatory bodies. See s. 215.37(3), F. S.
The department, in establishing the plan for implementation of staggered biennial licensing, may include establishment of the corollary fees on a biennial basis in lieu of the annual fees presently being collected, as its powers include collection of fees. See s. 455.007(1)(d), F. S. 1977. This implementation, of course, must be with the concurrence of the individual boards and commissions.
AS TO QUESTION 5:
Question 5 is answered in the affirmative. Within this question, you stated that the `registrations' and `permits' in question, as issued by certain boards under the department's jurisdiction, are treated as licenses and are renewable under the same terms and conditions as licenses. These registrations and permits are requirements for practice within the state in the various occupations and professions.
The primary guide to statutory interpretation of language is to determine the purpose of the legislation, the legislative will. State v. Atlantic Coast Line Railroad Co., supra. A statute should be construed in such a manner as to ascertain and give effect to the evident interpretation of the Legislature as set forth in the statute, and where any ambiguity in the meaning or context of a statute exists, this must yield to the legislative purpose. See
Smith v. City of St. Petersburg, 302 So.2d 756 (Fla. 1974).
The clear legislative purpose in the enactment of s. 455.09, F. S., is to create staggered biennial renewal of licenses to practice occupations and professions within the state. The use of the general and unqualified term `license' may and does include other authorizations such as permits and registrations. The term license has been defined by the Florida Supreme Court as a permit or privilege to do what otherwise would be unlawful. State ex.rel. Biscayne Kennel Club v. Stein, 178 So. 133 (Fla. 1938); Harry E. Prettyman, Inc., v. Florida Real Estate Commission, 109 So. 442
(Fla. 1926). Pursuant to Ch. 120, F. S., a `license' is a `franchise, permit, certification, registration, charter or similar form of authorization required by law, but it does not include a license required primarily for revenue purposes when issuance of the license is merely a ministerial act.' [Section120.52(7), F. S.; emphasis supplied.] Cf. s. 215.37(3), F. S., providing each board in the department shall be financed solely and individually from income accruing to it from fees, licenses, and other charges collected by the Bureau of Records Administration of the department and appropriating all such moneys to each such board.
It is apparent, therefore, that the term `license' within s. 455.09, F. S., would include certificates, registrations, and permits of the same type and nature, and therefore the department is authorized to implement a plan for staggered biennial renewal of same and to process such `certificates,' `registrations,' and `permits.'
Prepared by: Joseph W. Lawrence II, Assistant Attorney General