The Honorable George Firestone Secretary of State The Capitol Tallahassee, Florida 32301
Dear Mr. Firestone:
This is in response to your request for an Attorney General's Opinion on substantially the following question:
 IS A SUPERVISOR OF ELECTIONS AUTHORIZED TO SUBSTITUTE MICROFILM RECORDS FOR COPIES OF VOTER REGISTRATION CERTIFICATES OR FORMS OF REGISTERED VOTERS IN THE SUPERVISOR'S MASTER FILE OF ELECTORS MAINTAINED PURSUANT TO ss. 98.101, 98.412 AND 98.461, F.S.?
Section 1, Art. VI, State Const., provides that registration and elections shall be regulated by law. A permanent single registration system for the registration of electors to qualify them to vote in all elections is established by Ch. 98, F.S., for the several counties and municipalities. See, s. 98.041, F.S., which mandates that electors be registered pursuant to this system by the supervisor of elections or by a deputy supervisor and that registered electors shall not thereafter be required to register or reregister except as provided by law.
Section 98.101, F.S., sets forth specifications for maintaining the permanent registration system:
 In the permanent registration system, visible record binders, files, and registration forms shall be used as registration books. The binders shall be visible record binders, metal bound with built-in shifts, to hold executed registration forms, with labelholders and followers for sheet protection as necessary. The registration forms shall consist of duplicates, both to be signed by the registrant. One of the original executed forms shall be used for the poll binders, which binders shall have a built-in lock to protect the forms. The poll binders shall be divided in a manner convenient for electors to vote. The other original form shall be used for the office copies and arranged alphabetically, in suitable filing cabinets, thus providing a master list of all electors in the county; however, any county may, as an alternate method, use electronic data processing equipment to fulfill the requirements of this chapter.
And see, s. 98.111, F.S., which sets forth the information to be contained on the registration form.
As originally enacted, s. 98.101 [formerly 97.03, F.S. 1949] contained no provision authorizing an alternate method of meeting the requirements of the chapter. See, s. 3, Ch. 25391, 1949, Laws of Florida. The statute was amended by s. 7, Ch. 65-134, Laws of Florida, to include the clause which authorizes the use of electronic data processing equipment to fulfill the requirements of Ch. 98. During the same legislative session, ss. 98.391-98.441, F.S., were enacted by Ch. 65-139, Laws of Florida, to provide "a supplemental and alternative procedure in registration of electors and in voting by the use of data processing equipment and records, in counties where voting machines are used." See, Title to Ch. 65-139, Laws of Florida. It is to be presumed that different statutes on the same subject passed at the same legislative session are imbued with the same spirit and actuated by the same policy and that they should be construed in light of each other. State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68 (Fla. 1975); Tamiami Trail Tours v. City of Tampa, 31 So.2d 468 (Fla. 1947). See, e.g., Markham v. Blount,175 So.2d 526 (Fla. 1965). Thus, reading s. 98.101 in pari materia with ss. 98.391-98.441, it would appear that the alternate procedure created by the Legislature in ss. 98.391-98.441, F.S., represents the "alternate method" referred to in s. 98.101, F.S.
Sections 98.391-98.441, F.S., provide a supplemental and alternative procedure "for the registration of electors and for conducting elections at the precinct level, in those counties of the state where voting machines are used in the conduct of elections. . . ." (e.s.) Section 98.391, F.S. And see, 98.441, F.S., which states that these provisions are not intended to repeal any of the other provisions of the Elections Code, Chs. 97-106, F.S., but to provide an alternative procedure which may be followed in the affected counties. In counties which meet the statutory criterion, i.e., voting machines are used in conducting precinct level elections, the supervisor of elections and officials lawfully charged with conducting elections are authorized to "employ and adopt a system of automation in the processing of registration data, and make use of computers and data processing equipment and records adaptable for efficiency in conducting elections in such counties." See, s. 98.391, F.S. See also, s. 98.401, F.S., which describes the information to be contained on data processing cards authorized for use in this procedure. And see, s. 98.421, F.S., prescribing the use of registration data cards at the precinct level for the purpose of identifying and processing an elector prior to his or her entering the voting booth to cast a ballot; and s. 98.431, F.S. This alternative system specifies that "[a] master registration data record card shall be prepared, completed and kept by the supervisor of elections on each registered elector. Said master record cards shall be filed in alphabetical order, thus providing a master list of all voters throughout the county". (e.s.) Section 98.412, F.S. The system prescribed by ss. 98.391-98.441, F.S., speaks in terms of "master record cards" to be maintained as a master list of county voters and does not appear to authorize or contemplate the use of microfilm records.
Another supplemental and alternative procedure for the registration of electors and for conducting elections is provided in ss. 98.451-98.491, F.S. Enacted by Ch. 77-267, Laws of Florida, ss. 98.451-98.491 authorize the supervisor of elections to require a system of automation in the processing of registration data and to make use of computers and data processing equipment and records adaptable for efficiency in conducting elections. See, Title, Ch. 77-267, Laws of Florida, which states that the act provides a "supplemental and alternative procedure for identifying an elector at the polls through the use of data processing equipment and records." (e.s.) One indicator of the Legislature's intent is the title of the law enacting the statute. Parker v. State,406 So.2d 1089 (Fla. 1981). While the title of the act is not part of the basic act, it has the function of defining the scope of the act. Finn v. Finn, 312 So.2d 726 (Fla. 1975). Thus, it appears that the supplemental procedure provided by ss. 98.451-98.491, F.S., authorizes the application of data processing equipment and records to the procedure of identifying electors at the polls, not to the master list of electors to be maintained by the supervisor of elections. A master list of electors of the county is statutorily required by s. 98.461, F.S., which provides as follows:
 A registration form, approved by the Department of State, containing the information required in s. 98.111 shall be filed alphabetically in the office of the supervisor as the master list of electors of the county. A computer printout may be used at the polls as a precinct register in lieu of the registration books. The precinct register shall contain the date of the election, the precinct number, and the following information concerning each registered elector: last name, first name and middle name or initial; party affiliation; residence address; registration number; date of birth; sex; race; state or country of birth; whether the voter needs assistance in voting; and such other additional information as to readily identify the elector. The precinct register may also contain a list of the forms of identification approved by the Department of State, which shall include, but not be limited to, the voter registration identification card and Florida driver's license. The precinct register may also contain a space for the elector's signature, a space for the initials of the witnessing clerk or inspector, and a space for the signature slip or ballot number. (e.s.)
It is a well-recognized principle of statutory construction that the mention of one thing implies the exclusion of another — expressio unius est exclusio alterius — that is, when a statute enumerates the things upon which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned. See, Thayer v. State, 335 So.2d 815, 817 (Fla. 1976); Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952); Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234 (Fla. 1944). Further, a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.
See, Alsop v. Pierce, 19 So.2d 799 (Fla. 1944); Dobbs v. Sea Isle Hotel, supra. Therefore, the statutory requirement of an alphabetical file of registration forms as a master list of electors would appear to preclude the use of microfilm documents for such purpose.
The statutes discussed herein require the collection and compilation of original documents, i.e., registration forms (ss. 98.101 and 98.461, F.S.) and registration data record cards (s. 98.412, F.S.), to form a master list of all voters. No provision of Ch. 98, F.S., of which I am aware or to which you have drawn my attention would authorize a supervisor of elections to use documents or forms of documents other than those specifically described in ss. 98.101, 98.461 and 98.412, F.S. As the Florida Supreme Court stated in Alsop v. Pierce, supra, at 805-806: "When the Legislature has prescribed the mode, that mode must be observed. When the controlling law directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way. . . ." And see, Dobbs v. Sea Isle Hotel, supra; Thayer v. State, supra.
Thus, until legislatively or judicially determined otherwise, it is my opinion that the supervisor of elections is not authorized to substitute or replace voter registration forms or cards maintained in the supervisor's master file of registered voters pursuant to ss. 98.101, 98.412 and 98.461, F.S., with microfilm records.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General